## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

KEVIN DICKINSON,

        Plaintiff,

v.                                CIV 06-0257 MCA/LAM

PAUL BAGWELL, et al.,

        Defendants.

# PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

## PROPOSED FINDINGS

**THIS MATTER** is before the Court on *Defendants' Motion for Summary Judgment* (*Doc. 64*), filed on July 13, 2007. The motion was served by mail on July 13, 2007, and Plaintiff's response to the motion was due on July 30, 2007. Plaintiff failed to file any response to the motion. Under the Court's local rule D.N.M.LR-Civ. 7.1(b), a party's failure to file and serve a timely response in opposition to a motion constitutes consent to grant the motion. However, the Tenth Circuit has held that, in the case of a summary judgment motion, a sanction analysis under *Meade v. Grubbs*, 841 F.2d 1512 (10th Cir. 1988) must be undertaken if summary judgment is granted solely because the opposing party failed to respond to the motion. *See Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1193 (10th Cir. 2002). In the alternative, a court may consider the motion on its merits and, if judgment for the moving party is "appropriate" under Fed. R. Civ. P. 56,

---

[1]Within ten (10) days after a party is served with a copy of these Proposed Findings and Recommended Disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such proposed findings and recommended disposition. A party must file any objections with the Clerk of the United States District Court within the ten-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.

grant the motion and enter summary judgment on behalf of the moving party. *Id.* at 1195. In this case, the undersigned has determined that judgment for Defendants is appropriate under Rule 56 because Defendants have demonstrated that no genuine issue of material fact exists with regard to Plaintiff's claims and Defendants are entitled to judgment as a matter of law. Therefore, the undersigned recommends that Defendants' motion be **GRANTED** and that judgment be entered in favor of Defendants dismissing all of Plaintiff's claims and this case with prejudice.

In deciding this matter, the undersigned has considered Defendants' motion, Defendants' memorandum in support of the motion and the exhibits thereto,[2] the *Martinez* report filed by Defendants and Defendants' supplement to the *Martinez* report,[3] Plaintiff's responses to the *Martinez* report and Plaintiff's supplements to his responses,[4] the pleadings filed by the parties[5] and relevant law. In the order to file a *Martinez* report, the undersigned gave notice to the parties that the *Martinez* report could be used in deciding whether to grant summary judgment on Plaintiff's claims "whether by motion or *sua sponte*," and directed the parties to "submit whatever materials

---

[2]Defendants initially filed their ***Defendants' Memorandum in Support of Motion for Summary Judgment*** (*Doc. 65*) on July 13, 2007. However, on July 16, 2007, in response to a ***Notice of Deficiency*** (*Doc. 66*) entered by the Clerk of the Court, Defendants re-filed an identical copy of the memorandum in support as *Document 67*. All references in this document to the memorandum in support are to *Document 67*.

[3]Defendants' *Martinez* report and supplement to the *Martinez* report considered by the undersigned consist of: (1) Defendants' resubmitted *Martinez* report (*Doc. 41*), filed on February 9, 2007; and (2) a letter dated February 27, 2007, from Defendants' former attorney, Randolph B. Felker, together with its attachment (*Doc. 54* ), filed on May 8, 2007. Defendants filed an initial *Martinez* report (*Doc. 30*) on November 6, 2006, which was replaced in its entirety by the resubmitted *Martinez* report (*Doc. 41*).

[4]Plaintiff's responses to the *Martinez* report and supplements to the responses considered by the undersigned consist of: (1) a response to the initial *Martinez* report (*Doc. 34*), filed on December 11, 2006; (2) a supplement to the response to the initial *Martinez* report (*Doc. 37*), filed on January 9, 2007; (3) a conditional response to the resubmitted *Martinez* report (*Doc. 49*), filed on March 30, 2007; and (4) a supplement to the conditional response to the resubmitted *Martinez* report (*Doc. 51*), filed on April 10, 2007.

[5]The pleadings filed by the parties in this case consist of: (1) Plaintiff's ***Civil Rights Complaint*** (*Doc. 1*); (2) ***Paul Bagwell, Psy.D.'s Answer to Complaint*** (*Doc. 22*); (3) ***Vikram Alladi, M.D.'s Answer to Complaint*** (*Doc. 23*); and (4) ***Pierre Rouzaud, M.D.'s Answer to Complaint*** (*Doc. 27*).

they consider[ed] relevant to Plaintiff's claims in their submissions related to the *Martinez* report including, but not limited to, any counter-affidavits or other responsive material."[6]

### Background

Plaintiff is an inmate proceeding *pro se* and *in forma pauperis* who initiated this case on March 31, 2006, by filing his complaint (*Doc. 1*).  Because Plaintiff appears in this case *pro se*, the undersigned construes his pleadings and submission liberally, holding them to a less stringent standard than is required of a party represented by counsel.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  Plaintiff's complaint asserts civil rights claims pursuant to 42 U.S.C. § 1983 and names as defendants the New Mexico Behavioral Health Institute (hereinafter, "NMBHI"), Paul Bagwell, Pierre Rouzaud and Vikram Alladi.  Defendant NMBHI was dismissed from this case, and Plaintiff's claims against it were dismissed with prejudice, on June 5, 2006.[7]  The remaining individual defendants, Defendants Bagwell, Rouzaud and Alladi, are either current or former employees of NMBHI.[8]  Bagwell is a forensic psychologist and is the director of the forensic division at NMBHI who did not personally conduct any clinical interviews or testing of Plaintiff at NMBHI.[9]  Rouzaud was a staff psychiatrist at NMBHI while Plaintiff was a patient there who provided psychiatric services to Plaintiff related

---

[6]*See **Order to File a Martinez Report** (Doc. 29)* at 4-5.

[7]*See **Memorandum Opinion and Order** (Doc. 9)* at 3.

[8]*See **Civil Rights Complaint** (Doc. 1)* at ¶¶ 4-6; ***Paul Bagwell, Psy.D.'s Answer to Complaint** (Doc. 22)* at ¶ 4; ***Vikram Alladi, M.D.'s Answer to Complaint** (Doc. 23)* at ¶ 6; ***Pierre Rouzaud M.D.'s Answer to Complaint** (Doc. 27)* at ¶ 5.

[9]*See **Defendants' Resubmitted Martinez Report** (Doc. 41)* at 1191, ¶¶ 2, 5.

to the evaluation of his mental competency.[10]   Alladi is a staff physician at NMBHI who was
Plaintiff's primary medical doctor while he was a patient at NMBHI.[11]   Plaintiff sues Bagwell,
Rouzaud and Alladi in both their individual and official capacities.[12]   In his complaint, Plaintiff
alleges that he is confined in NMBHI pursuant to a commitment order in an attempt to restore his
competency to stand trial in state criminal proceedings;[13] however, it is apparent from the record that
Plaintiff has been released from NMBHI and that he is presently incarcerated at the Penitentiary of
New Mexico in Santa Fe, New Mexico.[14]

In his complaint, Plaintiff asserts in four counts that Defendants denied him necessary
medical and psychological treatment and testing, as well as access to legal materials and a
computer.[15]   He claims that Defendants' actions violated his rights under the First and Fourteenth
Amendments and he seeks class certification.[16]   He also invokes the Court's "pendant [sic]
jurisdiction,"[17] although he asserts no state law claims.  The prayer for relief in the complaint seeks
compensatory and punitive damages, declaratory and injunctive relief, and "any further relief [that]

---

[10]*See **Defendants' Memorandum in Support of Motion for Summary Judgment** (Doc. 67)*, Exhibit 3 (*Doc. 67-
4*) at ¶ 2.

[11]*See **Defendants' Memorandum in Support of Motion for Summary Judgment** (Doc. 67)*, Exhibit 2 (*Doc. 67-
3*) at ¶ 2.

[12]*See **Civil Rights Complaint** (Doc. 1)* at ¶¶ 4 - 6.

[13]*Id.* at ¶ 1.

[14]*See **Plaintiff's Notice of Change of Address ✩and ✩Request for Ruling on Motion to Amend Complaint**
(Doc. 72)*.

[15]*See **Civil Rights Complaint** (Doc. 1)*.

[16]*Id.* at ¶¶ 8 - 45.

[17]*Id.* at ¶ 1.

may be appropriate under the circumstances."[18]  Because Plaintiff's *pro se* status precludes class

certification, his request for class certification was denied on June 5, 2006.[19]

All of the claims in Plaintiff's complaint relate to his confinement at NMBHI.  More

specifically, the claims in his complaint allege that: (1) Defendants denied Plaintiff's requests for

psychological and psychiatric evaluation and denied him treatment, in violation of his rights under

the First and Fourteenth Amendments; (2) Defendants refused to treat Plaintiff for Attention Deficit

Hyperactivity Disorder (hereinafter, "ADHD"), refused to provide him with adequate and necessary

medical care for Chronic Obstructive Pulmonary Disease (hereinafter, "COPD"),[20] refused to

provide him with adequate treatment for chronic back pain, failed to maintain clean and sanitary

conditions in the forensic unit at NMBHI, and failed to provide him with adequate medical treatment

for skin rashes, a "pre-cancerous" growth, stomach pain and chronic diarrhea, in violation of his

rights under the Fourteenth Amendment; (3) Defendants refused to assist Plaintiff in his efforts to

conduct legal research and access legal research materials, refused to allow him to use a computer

and software to conduct legal research and prepare legal documents, and refused to obtain a Section

1983 complaint form for him, in violation of his rights under the First and Fourteenth Amendments;

and (4) Defendants refused to provide Plaintiff with medical treatment for Hepatitis C, denied him

vaccines for hepatitis, and refused to test him for Human Immunodeficiency Virus

---

[18]*Id.* at 11.

[19]*See* **Memorandum Opinion and Order** (*Doc. 9*) at 2-3.

[20]Although Plaintiff sometimes refers to this condition as "Chronic Pulmonary Obstructive Disease" in his submissions, the correct medical name of the condition is "Chronic Obstructive Pulmonary Disease." *Stedman's Medical Dictionary* (27th ed., Lippincott Williams & Wilkins 2000) at 2011.

(hereinafter, "HIV") and sexually transmitted diseases, in violation of his rights under the Fourteenth Amendment.[21]

In their motion before the Court, Defendants seek entry of summary judgment in their favor on all of Plaintiff's claims pursuant to Fed. R. Civ. P. 56.[22]  Defendants contend that there is no dispute as to the material facts relevant to the disposition of this case and that Defendants are entitled to summary judgment on all of Plaintiff's claims as a matter of law.[23]

### *Legal Standard for Summary Judgment*

A court may grant summary judgment if a moving party demonstrates that "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual dispute is "material" only if it "might affect the outcome of the suit under the governing law."  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).   The moving party "bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."  *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998).  Once this initial burden is met, the burden shifts to the nonmoving party to present specific, admissible facts from which a rational trier of fact could find for the nonmoving party.  *Id.* at 671.  The nonmoving party may not rest on his pleadings, but must set forth specific facts showing there is a genuine issue for trial.  *See Applied Genetics Int'l., Inc. v. First Affiliated Securities, Inc.*, 912 F.2d 1238, 1241 (10th Cir. 1990); *see also* Fed. R. Civ. P. 56(e).  "'[W]here the non[]moving party will bear the burden of proof at trial on a

---

[21]*See* **Civil Rights Complaint** (*Doc. 1*) at ¶¶ 8-42.

[22]*See* **Defendants' Motion for Summary Judgment** (*Doc. 64*) at 1.

[23]*Id.*

dispositive issue,' that party must 'go beyond the pleadings' and 'designate specific facts' so as to 'make a showing sufficient to establish the existence of an element essential to that party's case' in order to survive summary judgment." *McKnight v. Kimberly Clark Corp.*, 149 F. 3d 1125, 1128 (10th Cir. 1998) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

Supporting and opposing affidavits must be made on personal knowledge, set forth facts that would be admissible in evidence, and show that the affiant is competent to testify to the matters stated in the affidavit. *See* Fed. R. Civ. P. 56(e)(1). Copies of documents, or parts of documents, referred to in an affidavit must be sworn or certified and either attached to, or served with, the affidavit. *Id.* Only statements made with actual knowledge will support a motion for summary judgment and a court must disregard statements of mere belief. *See Tavery v. United States*, 32 F.3d 1423, 1427 (10th Cir. 1994). In considering a motion for summary judgment, a court assumes the evidence of the nonmoving party to be true and draws all justifiable inferences in the nonmoving party's favor. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 255. The essential inquiry on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

In this case, Defendants' *Martinez* report is treated like an affidavit and the Court is not authorized to accept the factual findings in the *Martinez* report if Plaintiff has presented conflicting evidence. *See Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991). Moreover, given that Plaintiff's complaint has been sworn under penalty of perjury,[24] it may be treated as an affidavit to the extent that it alleges facts based on Plaintiff's personal knowledge. *See Hall*, 935 F.2d at 1111. However, Plaintiff's complaint is subject to the requirement that a "nonmovant's affidavits must be

---

[24]*See* **Civil Rights Complaint** (*Doc. 1*) at 11.

based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Id.* (citations omitted).

### *Undisputed Material Facts*

Pursuant to the Court's local rule D.N.M.LR-Civ. 56.1(b), the memorandum in support of Defendants' motion for summary judgment contains a statement of the material facts as to which Defendants contend no genuine issue exists.[25]   This statement of material facts refers with particularity to those portions of the record on which Defendants rely.   As noted above, Plaintiff has not filed a response in opposition to Defendants' motion for summary judgment.   Nor has Plaintiff filed a statement of the material facts as to which he contends a genuine issue does exist. Accordingly, under the Court's local rule 56.1(b) all material facts set forth in Defendants' statement of material facts are deemed admitted by Plaintiff because they are not specifically controverted.[26]

Thus, by virtue of his failure to controvert the statement of material facts as to which Defendants contend no genuine issue exists, Plaintiff has admitted the following facts which are set forth in the memorandum in support of Defendants' motion for summary judgment:

1.      Plaintiff is incarcerated and is presently in the custody of the New Mexico Department of Corrections (hereinafter, "NMDOC") after a plea related to criminal charges stemming from an automobile accident in which Plaintiff is alleged to have intentionally forced the driver of another car to veer into oncoming traffic on August 9, 2004.   The other vehicle collided with a truck.   The driver of the other vehicle died.   Plaintiff was indicted for first degree murder,

---

[25]*See **Defendants' Memorandum in Support of Motion for Summary Judgment** (Doc. 67)* at 2-8.

[26]D.N.M.LR-Civ. 56.1(b) provides: "A memorandum in opposition to [a summary judgment]  motion must contain a concise statement of the material facts as to which the party contends a genuine issue does exist.   Each fact in dispute must be numbered, must refer with particularity to those portions of the record upon which the opposing party relies, and must state the number of the movant's fact that is disputed.   *All material facts set forth in the statement of the movant will be deemed admitted unless specifically controverted.*" (emphasis added).

aggravated battery, leaving the scene of an accident, tampering with evidence, aggravated assault and reckless driving.  Plaintiff is no longer in the custody of NMBHI.

2.      On December 14, 2005, Judge Blackmer, the presiding judge in the criminal matter, entered an order committing Plaintiff to NMBHI in Las Vegas, New Mexico, for the purpose of restoring Plaintiff's mental competence to stand trial.  Plaintiff was transferred to NMBHI on February 7, 2006.  He was later transferred from NMBHI on June 15, 2006, with a determination that he was competent to stand trial.

3.      Defendants are doctors who were on staff at NMBHI during the time of Plaintiff's commitment.  Dr. Bagwell is a forensic psychologist and is the Forensic Division Director at NMBHI.  Dr. Bagwell did not personally conduct any clinical interviews or psychological testing of Plaintiff.  Dr. Rouzaud was a staff psychiatrist at NMBHI and he performed the initial psychiatric evaluation of Plaintiff at NMBHI.  Dr. Alladi was a staff physician at NMBHI.  Dr. Alladi oversaw Plaintiff's medical care while he was committed to NMBHI.

4.      Dr. Alladi was Plaintiff's primary physician while Plaintiff was at NMBHI.

5.      On admission to NMBHI, Plaintiff underwent a physical examination in which he was asked for information on his present and past physical condition.

6.      Over the course of his four-month stay at NMBHI, Plaintiff received treatment for a multitude of claimed medical conditions.

7.      Dr. Alladi prescribed all necessary, appropriate and adequate medication for Plaintiff's underlying diagnosed physical/medical conditions.

8.      While Plaintiff was at NMBHI, he received reasonable medical care and evaluation.  Indeed, he received extensive and extraordinary medical care and evaluation.  His care and evaluation exceeded the norm.

9.      In each instance when Dr. Alladi believed Plaintiff should be referred to a specialist for evaluation or treatment, Dr. Alladi made an appropriate referral to a qualified medical specialist.

10.     Plaintiff was appropriately treated for every confirmed medical condition which reasonably required medical treatment.  Plaintiff's medical care, treatment and/or evaluation while he was at NMBHI was appropriate and was not deficient in any way.

11.     Plaintiff demanded treatment, medication and dosages which Dr. Alladi felt were unnecessary or inappropriate under the circumstances.  Plaintiff had no medical condition requiring treatment which was not appropriately treated.

12.     On repeated occasions, based on Plaintiff's complaints, Dr. Alladi referred Plaintiff to the appropriate medical specialists.

13.     The recommendations of outside medical specialists regarding Plaintiff were followed by NMBHI.

14.     Plaintiff complained about severe back pain.  Because of his previous history of substance abuse, Dr. Alladi felt he was not a candidate for opiates, which was also explained to Plaintiff.  He was being followed and treated by a physical therapist and an occupational therapist. Dr. Alladi received reports that he was active and had been playing football with other patients and staff.  In Dr. Alladi's medical opinion, there was no necessity for any further treatment of his claims of back pain.  An MRI of the thoracolumbo-sacral spine was ordered but could not be done before Plaintiff was discharged.

15.     Dr. Alladi considered Plaintiff's additional complaints and demands.  In Dr. Alladi's medical opinion, Dr. Alladi did not believe any additional medical treatment or diagnosis was necessary for Plaintiff.

16.    It was Dr. Alladi's observation and his medical opinion that most of Plaintiff's complaints were exaggerated or conjured.  Most of his complaints and claims were not verified by specialists who had seen him, and were not verified by [Dr. Alladi's] own observations and extensive testing.  There were questions about Plaintiff's veracity and as to the magnitude of the problems of which he was complaining.

17.    Upon admission to NMBHI, Plaintiff was evaluated by the attending psychiatrist and other members of a multidisciplinary team.

18.    While Plaintiff was a patient at NMBHI, Dr. Rouzaud provided psychiatric services to him of the nature of evaluating his mental competency.

19.    While Plaintiff was at NMBHI, he received reasonable, necessary and appropriate psychiatric care and treatment.

20.    Upon admission, Plaintiff presented a history of substance abuse, which partly explains his competency issues:

> The patient started drinking beer and wine at age 11 and his alcohol use has varied throughout the years. His last drink was about a month prior to his admission. He reported 10 instances of blackouts, the last time being about 5 years prior to this admission. He denied any history of alcohol withdrawal symptoms or substance abuse treatment. However he stated that he lived in a halfway house in Arizona for 7 months in 1998 and then it was court mandated. He said he started smoking marijuana at age 11 and was using that up until 5 or 6 years prior to admission. He says at one point his marijuana use was a daily thing and he smoked it through at least 15 years. He used crack cocaine episodically from 2001 to 2002. He also used cocaine intravenously from 1975 to 2004. Last time he used the cocaine was prior to his arrest about 4 months prior to his admission. He also episodically used methamphetamine both through snorting and IV from age 18 to the year 2004. He used heroin as an IV drug through age 20. He also

> experimented with LSD at the age of 18 and used
> hallucinogenic mushrooms from age 18 through 20.
> He inhaled gas and glue about 10 times in his life and
> said the last time he did that was at around age 30.
> He also reported history of being given Ritalin by a
> primary care physician from [ ] 1999 to 2004. He
> also has a history of abusing painkillers and
> benzodiazepines.

21.     It was Dr. Rouzaud's medical/psychiatric opinion, after due consideration, that prescribing psychotropic drugs to Plaintiff while at NMBHI would be contra-indicated. Dr. Rouzaud determined that the appropriate course to take during Plaintiff's evaluation was to monitor him, with no psychotropic medication, and to provide him group therapy by social workers to attempt to restore his competency.

22.     Plaintiff attended a number of group competency restoration sessions while at NMBHI.

23.     Plaintiff attended a number of group substance abuse sessions while at NMBHI.

24.     Plaintiff underwent periodic evaluations of his mental status to determine competency during his admission at NMBHI.

25.     Plaintiff was offered the opportunity to participate in competency training and substance abuse group sessions while at NMBHI. He attended sporadically and then withdrew from participation.

26.     NMBHI staff administered several psychological functioning tests to Plaintiff during his commitment at NMBHI.

27.     Plaintiff was offered recreational activities as part of his psychosocial rehabilitation treatment plan.

28.     Plaintiff's progress on goals established in the treatment plan was evaluated by NMBHI staff.

29.     Plaintiff exhibited no behavioral problems at time of discharge and had no obvious symptoms of psychosis or mood disorder at time of discharge.  The Final Forensic Report prepared on June 30, 2006, states that Plaintiff is competent to stand trial.

30.     NMBHI does not have a law library or legal materials.  Because of the competency issues associated with NMBHI patients, the facility has concluded that it should not use its limited financial resources to provide a law library because the vast majority of the patients would not be able to effectively use the resource due to their competency issues.

31.     Each NMBHI Forensic Division patient has the right to receive visits from his attorney in private at any reasonable time.  All patients are allowed telephone use and may receive incoming calls or place outgoing calls to their attorney.  NMBHI staff will assist patients with making outgoing calls to an attorney, if necessary.

32.     Plaintiff was represented by a court-appointed stand-by counsel during his entire confinement at NMBHI.

33.     The initial pleading in Plaintiff's habeas corpus matter was filed prior to Plaintiff's admission to NMBHI on February 7, 2006.  Plaintiff's habeas corpus petition was denied due to Plaintiff's failure to exhaust state remedies, and not due to lack of access to legal materials.

34.     During his confinement at NMBHI, a social worker placed a call to another attorney, Mr. Riggs, at Plaintiff's request on May 25, 2006.  Plaintiff spoke with Mr. Riggs.

35.     Protection & Advocacy is a non-profit organization that promotes the rights of people with disabilities in New Mexico.

36.     All Forensic Division patients have regular, frequent access to Protection & Advocacy representatives during regular business hours for the purpose of obtaining information on legal rights.

37.     NMBHI patients are permitted to meet with Protection & Advocacy advocates in a private area.  Patients also have access to a private telephone to make local, toll-free, or collect calls to Protection & Advocacy without monitoring by staff.

38.     NMBHI also employs a Patient Advocate whose role is to ensure the protection of the personal rights of patients.  Staff members assist patients in contacting and setting up appointments with the Patient Advocate or a Protection & Advocacy representative.

39.     Plaintiff received legal materials by mail while at NMBHI.

40.     The Forensic Division allows patients to receive legal materials by mail or from visitors, including Protection & Advocacy representatives.

41.     Plaintiff made several requests for copies and mailing of his legal pleadings.  Those requests were granted at no charge to Plaintiff.[27]

Given Plaintiff's failure to respond to Defendants' motion for summary judgment, the undersigned must determine whether judgment for Defendants is "appropriate" under Fed. R. Civ. P. 56(e)(2).  *Reed v. Nellcor Puritan Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002).

> Summary judgment is *appropriate* only if the moving party demonstrates that no genuine issue of material fact exists and that it is entitled to judgment as matter of law.  By failing to file a response within the time specified by the local rule, the nonmoving party waives the right to respond or to controvert the facts asserted in the summary judgment motion [and] [t]he court should accept as true all material facts asserted and properly supported in the summary judgment motion.  But only if those facts entitle the moving party to

---

[27]*See* **Defendants' Memorandum in Support of Motion for Summary Judgment** (*Doc. 67*) at 2-8.

> judgment as a matter of law should the court grant summary
> judgment.

*Id.* at 1195 (citations omitted and emphasis added).  Therefore, the undersigned reviews the facts admitted by Plaintiff to determine if they are properly supported by the record and if they, together with the other materials in the record, demonstrate that no genuine issues of material fact remain and that Defendants are entitled to judgment as a matter of law.

### *Exhaustion of Prison Administrative Remedies*

The Prison Litigation Reform Act (hereinafter, "PLRA"), 42 U.S.C. § 1997e(a), provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  Plaintiff was a "prisoner," as defined in the PLRA, while committed at NMBHI, by virtue of his status as a pretrial detainee accused of violations of criminal law.  42 U.S.C. § 1997e(h).  In his complaint, Plaintiff fails to specifically allege that he exhausted his claims against Defendants and it is unclear from the allegations in his complaint whether he did so.[28]  Defendants have not raised failure to exhaust as an affirmative defense and this defense is not addressed in Defendants' motion for summary judgment.  Accordingly, the undersigned does not address the issue of exhaustion on the merits and assumes, in analyzing Defendants' motion, that Plaintiff exhausted administrative remedies with regard to each of his claims.

### *Analysis of Plaintiff's Claims*

#### A.  *Deliberate Indifference to Serious Medical Needs*

Plaintiff asserts multiple claims that Defendants violated his constitutional rights in connection with his medical treatment at NMBHI which the undersigned liberally construes as

---

[28]It is possible that NMBHI had no administrative remedies to exhaust.  In their resubmitted *Martinez* report, Defendants state that NMBHI has not implemented a comprehensive administrative grievance procedure for its patients. *See* **Defendants' Resubmitted Martinez Report** (*Doc. 41*) at 13.

claims that Defendants were deliberately indifferent to Plaintiff's serious medical needs. Because Plaintiff was a pretrial detainee during the time these claims arose, his claims are evaluated under the due process clause of the Fourteenth Amendment which provides "the same degree of protection against denial of medical care as that afforded to convicted inmates under the Eighth Amendment." *Estate of Hocker ex rel. Hocker v. Walsh*, 22 F.3d 995, 998 (10th Cir. 1994). Thus, the analysis of Plaintiff's claims of inadequate medical attention at NMBHI is "identical to that applied in Eighth Amendment cases brought pursuant to § 1983." *Lopez v. LeMaster*, 172 F.3d 756, 759 n. 2 (10th Cir. 1999).

Prison officials violate the Eighth Amendment with regard to medical care if their "deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted). "This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care . . . ." *Id.* at 104-05 (footnotes omitted). However, "[m]edical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Id.* at 106. A complaint asserting "an inadvertent failure to provide adequate medical care" or "that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Id.* at 105-06. "Rather, 'a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.'" *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006), quoting *Estelle*, 429 U.S. at 106.

The standard for a "deliberate indifference" claim has two elements, one objective and one subjective. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). The objective element of the standard is met if the harm suffered by an inmate is "'sufficiently serious'" to implicate the cruel

and unusual punishment clause of the Eighth Amendment.  *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).  "A medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Sealock*, 218 F.3d at 1209 (internal quotation marks omitted).  "[T]he purpose for this requirement is to limit claims to significant, as opposed to trivial, suffering . . . ."  *Mata v. Saiz*, 427 F.3d 745, 753 (10th Cir. 2005).  The subjective element of the standard "is met if a prison official 'knows of and disregards an excessive risk to inmate health or safety.'"  *Sealock*, 218 F.3d at 1209 (quoting *Farmer*, 511 U.S. at 837).  To satisfy this element of the standard, an inmate "must establish that defendant(s) knew he faced a substantial risk of harm and disregarded that risk, 'by failing to take reasonable measures to abate it.'"  *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999), quoting *Farmer*, 511 U.S. at 847.

In his multiple claims, Plaintiff asserts that Defendants either denied him medical treatment, or provided him with inadequate medical treatment, while he was committed at NMBHI.  The undersigned examines these claims under the "deliberate indifference" standard and finds that Defendants are entitled to summary judgment on each claim.

### *Plaintiff's First Deliberate Indifference Claim*

For his first claim of deliberate indifference, Plaintiff alleges that he was committed by court order to the forensic unit at NMBHI for treatment to facilitate his competency to stand trial and that he was admitted to the forensic unit on February 7, 2006.[29]  He alleges that the only competency treatment available in the forensic unit was "an instructional-format based group which gives a

---

[29]*See **Civil Rights Complaint** (Doc. 1)* at ¶ 9.  The criminal case in which Plaintiff was determined incompetent to stand trial is described in his complaint as *State of New Mexico v. Kevin Bruce Dickinson*, Bernalillo County Case No. CR-04-03385, and is described as including,  *inter alia*, a criminal charge of "depraved mind first degree murder stemming from an automobile crash."  *Id.* at ¶ 2.

limited explanation of the judicial system."[30]  He alleges that he was "adjudicated incompetent to stand trial" because his explanation of the events constituting his defense in his criminal case was characterized as "delusion" and "paranoid."[31]  He alleges that he requested psychological and psychiatric evaluation and, if appropriate, treatment, but Defendants denied those requests.[32]  Additionally, he alleges that he is not incompetent and that Defendants made no effort to determine his competence or treat "any deficiency," or to provide him with "any sort of psychiatric or psychological treatment."[33]

The undersigned assumes, without deciding, that Plaintiff suffers from a serious mental disorder.[34]  However, the uncontroverted facts presented by Defendants in support of their motion fail to demonstrate that Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety with regard to his mental health care.  Thus, Plaintiff has not satisfied the subjective element of the deliberate indifference standard.

Defendants supported their motion for summary judgment with the materials in the *Martinez* report and their sworn affidavits.  These materials, which are uncontroverted, show that Plaintiff's mental health was evaluated and treated on a regular basis during the period of his commitment at NMBHI.

---

[30]*Id.* at ¶ 10.

[31]*Id.* at ¶ 11.

[32]*Id.* at ¶ 12.

[33]*Id.* at ¶ 13.

[34]The record shows that upon discharge from NMBHI, Plaintiff was diagnosed as suffering from Polysubstance Dependence (in a controlled environment), Delusional Disorder (not otherwise specified), and Personality Disorder (not otherwise specified with antisocial features).  *See Defendants' Memorandum in Support of Motion for Summary Judgment* (*Doc. 67*), Exhibit 3 (*Doc. 67-4*) at page numbered 18 in the Court's CM-ECF electronic docketing system.  Additionally, in a final forensic report prepared by psychologist Daniel E. McCombs, Ph.D., Plaintiff was diagnosed as suffering from Delusional Disorder (mixed type, including persecutory and grandiose themes), Polysubstance Dependence (in a controlled environment), and Personality Disorder, Not Otherwise Specified (with antisocial, paranoid and histrionic traits).  *Defendants' Resubmitted Martinez Report* (*Doc. 41*) at 000195.

On December 14, 2005, Plaintiff was committed to NMBHI by court order for the purpose of restoring his mental competency to stand trial in his state criminal case.[35] Plaintiff was admitted to NMBHI on February 7, 2006.[36] Upon admission, Plaintiff's mental health was evaluated by Dr. Rouzaud and other health care providers.[37] On February 7, 2006, a treatment plan was developed for Plaintiff by Dr. Rouzaud.[38] During Plaintiff's commitment, he was administered psychological functioning tests on multiple occasions.[39] Dr. Rouzaud provided psychiatric services to Plaintiff during his commitment to evaluate his mental competency.[40] Dr. Rouzaud concluded, in his professional medical opinion, that prescribing psychotropic drugs to Plaintiff while he was committed at NMBHI was inappropriate.[41] Rather, Dr. Rouzaud determined that the appropriate course to take during his evaluation of Plaintiff was to monitor his condition and provide him with group therapy by social workers in an effort to restore his competency.[42] The record shows that Plaintiff was offered, and attended, group competency restoration sessions and group substance abuse sessions while at NMBHI.[43] Additionally, Plaintiff was offered recreational activities at

---

[35]*See **Defendants' Resubmitted Martinez Report** (Doc. 41)* at 000005-000008.

[36]*Id.* at 000109.

[37]*Id.* at 000150-000156; 000166-000171; 000296-000304.

[38]*Id.* at 000300-000303.

[39]*Id.* at 000193-000194.

[40]*See **Defendants' Memorandum in Support of Motion for Summary Judgment** (Doc. 67)*, Exhibit 3 (*Doc. 67-4*), at ¶ 2.

[41]*Id.* at ¶ 6.

[42]*Id.*

[43]*Id.* at ¶¶ 7-8; *see also **Defendants' Resubmitted Martinez Report** (Doc. 41)* at 000174-000180; 000192-000193; 000340; 000377; 01017-01019.

NMBHI as part of his psychosocial rehabilitation treatment plan.[44]  Plaintiff's mental capacity was evaluated periodically at NMBHI to determine his competency.[45]  Plaintiff's progress toward goals established in his treatment plan was assessed periodically by NMBHI staff.[46]  Plaintiff was discharged from NMBHI on June 15, 2006.[47]  Upon discharge, it was noted that Plaintiff presented no behavioral problems and presented no obvious symptoms of psychosis or mood disorder.[48]  The final forensic report on Plaintiff, prepared by Daniel E. McCombs, Ph.D., dated June 30, 2006, concluded that Plaintiff was competent to stand trial in his criminal case.[49]

It is apparent from this record that Plaintiff's mental health care needs were addressed by NMBHI staff while Plaintiff was committed there.  Plaintiff's conclusory allegations in his complaint and his responses to the *Martinez* report do not establish a constitutional violation based on deliberate indifference to his mental health care.  Inmates are entitled to "a level of medical care which is reasonably designed to meet [their] routine and emergency health care needs," including "medical treatment for . . . psychological or psychiatric care."  *Ramos v. Lamm*, 639 F.2d 559, 574 (10th Cir. 1980) (internal quotation marks and citation omitted).  In essence, Plaintiff disagrees with the mental health care he was given at NMBHI, but this does not amount to a constitutional violation.  "[A] prisoner who merely disagrees with a diagnosis or a prescribed course of treatment does not state a constitutional violation."  *Perkins v. Kansas Dep't. of Corrections*, 165 F.3d 803, 811 (10th Cir. 1999) (citation omitted).  Plaintiff has failed to come forward with evidence showing

---

[44]*See **Defendants' Resubmitted Martinez Report** (Doc. 41)* at 000227-000229.

[45]*Id.* at 000181-000186; 000189-000195.

[46]*Id.* at 000294-000295; 000308-000313.

[47]*Id.* at 000109.

[48]*Id.* at 000115.

[49]*Id.* at 000189.

a genuine issue for trial with regard to his mental health care needs. *See* Fed. R. Civ. P. 56(e)(2); *Celotex Corp.*, 477 U.S. at 322 (summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.")  Based on the uncontroverted evidence supplied by Defendants and Plaintiff's failure to come forward with evidence to show deliberate indifference, there is no genuine issue of material fact as to his Fourteenth Amendment claim based on his mental health care at NMBHI and Defendants are entitled to judgment on this claim as a matter of law.

### *Plaintiff's Second Deliberate Indifference Claim*

For his second claim of deliberate indifference, Plaintiff alleges that he suffers from ADHD for which Defendants refused to treat him, causing "unnecessary stress and anxiety."[50]  Additionally, Plaintiff alleges that he suffers from COPD, due to a lifelong history of asthma and allergies, with emphysema, for which Defendants refused to provide "necessary and adequate medical care," causing "pain and stress."[51]  Plaintiff also alleges that he suffers from chronic back pain, caused by calcium deposits or bone spurs, degenerative disc disease and a painful injury, for which Defendants refused to provide any treatment other than over-the-counter analgesics, provided in inadequate amounts and spaced so far apart in time "as to cause unnecessary pain."[52]  Plaintiff further alleges that the two patient bathrooms in the forensic unit at NMBHI were cleaned only once per day, and sometimes less than that, and commonly had urine on the floors at least twenty-two hours per day and often had feces on the floors and walls, resulting in urine and feces being tracked throughout

---

[50]*Civil Rights Complaint* (*Doc. 1*) at ¶ 15.

[51]*Id.* at ¶ 16.

[52]*Id.* at ¶ 17.

the forensic unit by patients, producing a stench that was continuous and could be smelled in the hallways and often in Plaintiff's room.[53]  Additionally, Plaintiff alleges that he suffers from painful skin rashes for which Defendants refused to provide "adequate treatment."[54]  Finally, Plaintiff alleges that he has a "pre-cancerous" growth, apparently in his digestive system, for which Defendants have refused any treatment, other than Mylanta, despite his daily complaints of stomach pain and chronic diarrhea.[55]

### *1. ADHD*

Plaintiff has failed to submit evidence demonstrating that he satisfies either element of the deliberate indifference standard with regard to his claim that he suffers from ADHD.  With the exception of Plaintiff's conclusory allegations and self-reports that he suffers from ADHD, there is no evidence in the record, medical or otherwise, that Plaintiff has been diagnosed with, or requires treatment for, this condition.  Nor is there evidence in the record that this condition is so obvious that a lay person would recognize Plaintiff's need for a doctor's treatment for this condition.  Moreover, the uncontroverted facts presented by Defendants in support of their motion fail to demonstrate that Defendants disregarded an excessive risk to Plaintiff's health or safety with regard to treatment for this condition.

### *2. Chronic Obstructive Pulmonary Disease; Chronic Back Pain; Painful Skin Rashes; Pre-Cancerous Growth*

In his complaint, Plaintiff alleges, in conclusory fashion, that he suffers from COPD, chronic back pain, painful skin rashes and a pre-cancerous growth related to his digestive system.  While there is evidence in Defendants' submissions that Plaintiff was diagnosed with, and/or complained

---

[53]*Id.* at ¶ 18.

[54]*Id.* at ¶ 19.

[55]*Id.* at ¶ 20.

-22-

of, these conditions, that evidence demonstrates that Plaintiff was appropriately treated for these conditions. Moreover, there is no evidence in the record that Defendants knew of and disregarded an excessive risk to Plaintiff's health or safety with regard to any of these conditions. The uncontroverted evidence submitted by Defendants in support of their motion shows the following with regard to Plaintiff's medical treatment for these conditions.

Defendant Vikram Alladi, M.D., was Plaintiff's primary medical doctor while Plaintiff was committed at NMBHI.[56] While Plaintiff was under Dr. Alladi's care, he informed Dr. Alladi that he had emphysema and a history of bronchial asthma and allergies and he demanded treatment for these conditions.[57] In response, Dr. Alladi referred Plaintiff to a specialist, Dr. Miller, who recommended the use of inhalers for these conditions.[58] Plaintiff was seen by Dr. Miller on multiple occasions for evaluation of his COPD and Dr. Miller noted that there was a marked improvement in Plaintiff's condition.[59] Initially, Plaintiff was required to get inhalers from the nursing staff, while his complaints of a cardiac condition were evaluated, but he was later given possession of inhalers after his cardiac evaluation proved negative.[60] A summary of Plaintiff's medical care at NMBHI prepared by Dr. Alladi is attached to Dr. Alladi's affidavit submitted by Defendants and incorporated therein by reference.[61] A copy of this statement is also included in Defendants'

---

[56]*See Defendants' Memorandum in Support of Motion for Summary Judgment* (*Doc. 67*), Exhibit 2 (*Doc. 67-3*) at ¶ 2.

[57]*Id.* at ¶ 10.

[58]*Id.*; *see also Defendants' Resubmitted Martinez Report* (*Doc. 41*) at 000223-000224.

[59]*See Defendants' Resubmitted Martinez Report* (*Doc. 41*) at 000117; 000406.

[60]*See Defendants' Memorandum in Support of Motion for Summary Judgment* (*Doc. 67*), Exhibit 2 (*Doc. 67-3*) at ¶ 10.

[61]*Id.* at ¶ 15.

resubmitted *Martinez* report.[62]   This statement confirms that Dr. Miller was a pulmonologist who diagnosed Plaintiff with severe COPD; describes in further detail the medications given to Plaintiff for this condition; and confirms that Plaintiff was given a chest x-ray, a chest CT scan and lung function tests in connection with his medical treatment for COPD while at NMBHI.[63]   Medications given to Plaintiff for his respiratory problems at NMBHI included Albuterol, Atrovent, Advair and Singulair.[64]  Plaintiff was also given the allergy medications Zyrtec, Benadryl and Sudafed while at NMBHI.[65]

Plaintiff also complained to Dr. Alladi about severe back pain.[66]   Dr. Alladi concluded that Plaintiff was not a candidate for opiates because of a past history of substance abuse, but Plaintiff was followed and treated by a physical therapist and participated in a physical therapy program recommended by the physical therapist.[67]   Dr. Alladi received reports that Plaintiff was active and had been playing football with patients and staff and it was Dr. Alladi's medical opinion that there was no need for any further treatment of Plaintiff's claims of back pain.[68]   Nevertheless, Dr. Alladi ordered an MRI of Plaintiff's thoracolumbo-sacral spine but this MRI could not be completed before

---

[62]*See Defendants' Resubmitted Martinez Report* (*Doc. 41*) at 000341-000345.

[63]*See Defendants' Memorandum in Support of Motion for Summary Judgment* (*Doc. 67*), Exhibit 2 (*Doc. 67-3*), Exhibit A at pages numbered 5-6 in the Court's CM-ECF electronic docketing system; *see also Defendants' Resubmitted Martinez Report* (*Doc. 41*) at 000220-000223; 000225; 000333; 000336.

[64]*See Defendants' Resubmitted Martinez Report* (*Doc. 41*) at 000318; 000330; 000333.

[65]*Id.* at 000318; 000327-000328; 000336; 000361; 000365.

[66]*See Defendants' Memorandum in Support of Motion for Summary Judgment* (*Doc. 67*), Exhibit 2 (*Doc. 67-3*), Exhibit A at ¶ 12.

[67]*Id.; see also Defendants' Resubmitted Martinez Report* (*Doc. 41*) at 000230-000233; 000375; 000383; 01017-01018.

[68]*See Defendants' Memorandum in Support of Motion for Summary Judgment* (*Doc. 67*), Exhibit 2 (*Doc. 67-3*), Exhibit A at ¶ 12; *see also Defendants' Resubmitted Martinez Report* (*Doc. 41*) at 000338-000339; 000343.

Plaintiff was discharged from NMBHI.[69]  There is evidence in the record that Plaintiff became agitated during his appointment for the MRI, complained of claustrophobia, demanded that he be given a specific medication rather than the medication recommended by Dr. Alladi, and argued with Dr. Alladi over an appropriate medication resulting in deferral of the MRI.[70]  The record shows that Plaintiff was given ibuprofen and Tylenol to relieve his back pain while at NMBHI.[71]  Plaintiff was denied the use of a cane by Dr. Alladi for security reasons.[72]

Plaintiff also complained to Dr. Alladi of psoriasis and skin cancer.[73]  Dr. Alladi referred Plaintiff to a dermatologist, who examined Plaintiff and found no evidence of skin cancer or melanoma.[74]  The dermatologist diagnosed Plaintiff as suffering from excema and recommended the medication triamcinolone cream, Selsun shampoo and Dove soap which were provided to Plaintiff.[75]

Plaintiff also complained to Dr. Alladi of gastric cancer and gastric reflux disease, and Dr. Alladi referred Plaintiff to a surgeon, Dr. Harris.[76]  Dr. Harris performed an endoscopy and biopsies on Plaintiff and reported some mild gastritis but indicated that there was no evidence of

---

[69]See *Defendants' Memorandum in Support of Motion for Summary Judgment* (*Doc. 67*), Exhibit 2 (*Doc. 67-3*), Exhibit A at ¶ 12; *see also* *Defendants' Resubmitted Martinez Report* (*Doc. 41*) at 000218-000219.

[70]See *Defendants' Memorandum in Support of Motion for Summary Judgment* (*Doc. 67*), Exhibit 2 (*Doc. 67-3*), Exhibit A at pages numbered 7-8 in the Court's CM-ECF electronic docketing system; *see also* *Defendants' Resubmitted Martinez Report* (*Doc. 41*) at 000118; 000343-000344 .

[71]See *Defendants' Resubmitted Martinez Report* (*Doc. 41*) at 000209; 000320; 000336; 000373.

[72]*Id.* at 000118; 000338-000339.

[73]See *Defendants' Memorandum in Support of Motion for Summary Judgment* (*Doc. 67*), Exhibit 2 (*Doc. 67-3*) at ¶ 10.

[74]*Id.*

[75]*Id.; see also* *Defendants' Resubmitted Martinez Report* (*Doc. 41*) at 000117; 000216-000217; 000343.

[76]See *Defendants' Memorandum in Support of Motion for Summary Judgment* (*Doc. 67*), Exhibit 2 (*Doc. 67-3*) at ¶ 10.

gastric cancer or malignancy.[77]  Plaintiff was given the medications Carafate, Protonix, Prevacid, Zantac, Pepcid and Mylanta for this condition.[78]  He was also prescribed the medication Imodium for diarrhea.[79]

Assuming, without deciding, that each of the foregoing conditions was sufficiently serious to satisfy the objective element of the deliberate indifference standard, the uncontroverted facts presented by Defendants in support of their motion fail to demonstrate that Defendants disregarded an excessive risk to Plaintiff's health or safety with regard to his health care for these conditions at NMBHI.  It is apparent from the record that Plaintiff's medical needs regarding these conditions were adequately addressed by NMBHI staff and that several appropriate referrals were made to outside healthcare providers, when necessary.  Plaintiff's conclusory allegations in his complaint and responses to the *Martinez* report do not establish a constitutional violation based on deliberate indifference to his medical care for these conditions.  Again, Plaintiff disagrees with the medical treatment he was given at NMBHI for these conditions, but this does not amount to a constitutional violation.  *See Perkins*, 165 F.3d at 811.  Plaintiff has failed to come forward with evidence showing a genuine issue for trial with regard to his medical care for these conditions. Fed. R. Civ. P. 56(e)(2); *Celotex Corp.*, 477 U.S. at 322.  Based on the uncontroverted evidence provided by Defendants, and Plaintiff's failure to come forward with evidence to show deliberate indifference, there is no genuine issue of material fact as to Plaintiff's Fourteenth Amendment claim based on his medical treatment at NMBHI for these conditions and, therefore, Defendants are entitled to judgment on this claim as a matter of law.

---

[77]*Id.*; *see also* **Defendants' Resubmitted Martinez Report** (*Doc. 41*) at 000117.

[78]*See* **Defendants' Resubmitted Martinez Report** (*Doc. 41*) at 00017; 000326-000327; 000331; 000334; 000342-000343; 000365.

[79]*Id.* at 000125; 000358.

### 3.  Patient Bathrooms in Forensic Unit at NMBHI

Even if Plaintiff's allegations of unsanitary conditions in the NMBHI bathrooms are taken as true, Defendants are entitled to summary judgment as a matter of law with regard to this claim. First, Plaintiff fails to allege that he suffered a physical injury resulting from the alleged unsanitary conditions in the NMBHI bathrooms and there is no evidence in the record of such an injury.  While a mental or emotional distress claim might be considered implicit in Plaintiff's allegations of unsanitary conditions, his ability to litigate a claim for mental distress in the absence of accompanying physical injury is barred by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e) ("No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury.").  Thus, Plaintiff cannot pursue this claim, at least with respect to an award of compensatory damages, because no claim of physical injury has been alleged or shown. *See Perkins v. Kansas Dep't. of Corrections*, 165 F.3d 803, 807-08 (10th Cir. 1999) (if plaintiff's claim is barred by Section 1997e(e), he may still seek redress of emotional injury through injunctive relief).  To the extent that Plaintiff seeks declaratory and injunctive relief with regard to this claim, his claim is moot as a result of his transfer from NMBHI to a different institution.  *See Green v. Branson*, 108 F.3d 1296, 1300 (10th Cir. 1997) (prisoner's transfer or release from jail generally moots his claims for declaratory and injunctive relief regarding jail conditions).

Second, this claim is without merit from a constitutional standpoint.  Apart from Plaintiff's general observations of unsanitary conditions in the forensic unit at NMBHI, there is no evidence in the record that Plaintiff was injured by such conditions if they did exist.  Accordingly, this claim is not constitutionally actionable and Defendants are entitled to judgment on this claim as a matter of law.  *See Swoboda v. Dubach*, 992 F.2d 286, 289-90 (10th Cir. 1993) (where prisoner "stated no

specific facts . . . indicating how the [prison] conditions caused him injury . . . [his] claims [were]

little more than conclusory allegations, which are insufficient to state [an Eighth Amendment] claim

for relief.").

### *Plaintiff's Third Deliberate Indifference Claim*

For his third claim of deliberate indifference, Plaintiff alleges that he has tested positive for

Hepatitis C but Defendants refused to provide him with treatment for this disease and denied him

vaccines for hepatitis.[80]   Additionally, he alleges that he "potentially" has HIV but Defendants

refused to test him for this disease and refused to test him for any sexually transmitted diseases.[81]

In his medical history upon admission, Plaintiff reported to Dr. Rouzaud that he was positive

for Hepatitis C.[82]  In his answer, Dr. Alladi admits that Plaintiff has tested positive for Hepatitis C.[83]

While there is no evidence in the record that Plaintiff was treated for Hepatitis C while committed

at NMBHI, there is also no evidence that Plaintiff manifested symptoms of Hepatitis C or requested

---

[80]*See Civil Rights Complaint* (*Doc. 1*) at ¶¶ 39, 41.

[81]*Id.* at ¶¶ 40-42.  There is some evidence in the record indicating that Plaintiff requested HIV testing at NMBHI on May 1 and June 5 of 2006.  *See Renewal of Motion for Postponement of Martinez Report Until After Defendants Respond to Plaintiff's Initial Discovery Requests and After Plaintiff Files His First Amended Complaint and/or Plaintiff's Conditional Response to Defendants' Martinez Report* (*Doc. 49*), Exhibit D (*Doc. 49-2*), at page numbered 15 in the Court's CM-ECF electronic docketing system, and Exhibit D (*Doc. 49-3*), at page numbered 12 in the Court's CM-ECF electronic docketing system. This evidence appears in what seems to be a diary kept by Plaintiff while he was a patient at NMBHI.  An entry in this diary dated June 7, indicates that an individual named "Robert" talked to Dr. Alladi regarding an HIV test and states "he will call county health for: 1) HIV/AIDS test[,] 2) STD tests[, and] 3) Hepatitis B vaccinations (3)."  *See Renewal of Motion for Postponement of Martinez Report Until After Defendants Respond to Plaintiff's Initial Discovery Requests and After Plaintiff Files His First Amended Complaint and/or Plaintiff's Conditional Response to Defendants' Martinez Report* (*Doc. 49*), Exhibit D (*Doc. 49-3*), at page numbered 14 in the Court's CM-ECF electronic docketing system. As noted above, Plaintiff was discharged from NMBHI shortly thereafter on June 15, 2006.

[82]*See Defendants' Memorandum in Support of Motion for Summary Judgment* (*Doc. 67*), Exhibit 3 (*Doc. 67-4*) at page numbered 5 in the Court's CM-ECF electronic docketing system.

[83]*See Vikkram Alladi, M.D.'s Answer to Complaint* (*Doc. 23*) at ¶ 30.

or required treatment for Hepatitis C while he was a patient at NMBHI.[84]  Moreover, Plaintiff does not allege, and the evidence in the record does not show, that Plaintiff was harmed in any way by not being treated for Hepatitis C during the four months he was a patient at NMBHI.  As noted above, deliberate indifference involves both objective and subjective elements.  *See Kikumura v. Osagie*, 461 F.3d 1269, 1291 (10th Cir. 2006).  "The objective component of the test is met if the harm suffered is sufficiently serious to implicate the Cruel and Unusual Punishment Clause [of the Eighth Amendment]."  *Id.* (internal quotation marks omitted).  Here, Plaintiff has made no showing that he suffered any harm from not being treated for Hepatitis C at NMBHI.  Thus, he has made no showing that his constitutional rights were violated under the first prong of the deliberate indifference standard with regard to this claim.

Plaintiff's allegations regarding Defendants' alleged failure to test him for HIV and sexually transmitted diseases also fail.  There is no medical evidence in the record that Plaintiff suffers from these diseases.[85]  Nor is there evidence in the record that Plaintiff sustained harm from not being tested for these diseases while at NMBHI.  Thus, Plaintiff has failed to demonstrate that he can satisfy the objective element of the deliberate indifference standard with regard to the alleged lack of testing.  "[I]n evaluating whether a deliberate indifference claim has been established, we first look to whether the harm suffered rises to a level 'sufficiently serious' to be cognizable under the

---

[84]In his admission report for Plaintiff dated February 7, 2006, Dr. Alladi noted Plaintiff's history of Hepatitis C, but stated that Plaintiff had "[n]o hepatomegaly, . . . [or] hepatic tenderness secondary to hepatitis C."  *See Defendants' Resubmitted Martinez Report* (*Doc. 41*) at 000162.  In his discharge report for Plaintiff dated June 15, 2006, Dr. Alladi noted Plaintiff's history of Hepatitis C, but stated that Plaintiff "had no splenomegaly or hepatic tenderness secondary to hepatitis C."  *Id.* at 000116.

[85]Upon admission to NMBHI, Plaintiff reported to Dr. Alladi that he was tested for HIV in 1998 and, at that time, was found to be negative.  *See Defendants' Resubmitted Martinez Report* (*Doc. 41*) at 000161.  In his *Verified Supplement to Plaintiff's Conditional Response to Defendants' Martinez Report* (*Doc. 51*), Plaintiff implies that he may be HIV positive, but his statements on the subject are inconclusive.  *See Verified Supplement to Plaintiff's Conditional Response to Defendants' Martinez Report* (*Doc. 51*) at 1, n. 2.  More importantly, Plaintiff fails to provide any evidence that he is HIV positive or that he is in need of any testing or treatment.

Cruel and Unusual Punishment Clause." *Mata v. Saiz*, 427 F.3d 745, 752-53 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 834).  Here, Plaintiff has made no showing that he suffered harm from Defendants' alleged failure to test him for HIV or sexually transmitted diseases.  Therefore, his claim regarding the alleged lack of testing for these diseases is not cognizable under the constitutional standard for deliberate indifference.

## B.   Denial of Access to the Courts

For his claim of denial of access to the Courts, Plaintiff alleges that there is no law library in the forensic unit at NMBHI and that Defendants refused to assist him with his requests for legal research.[86]  Additionally, Plaintiff alleges that ADHD makes it difficult for him to write, causes him to forget to write down important facts and sometimes makes it difficult for him to present facts so they connect together in support of his position, but that using a word processing program on a computer "eliminates or greatly minimizes" such problems.[87]  Plaintiff alleges that Defendants refused to allow him the use of a computer or the use of his own personal computer and computer disks to write and perform legal research.[88]  Plaintiff alleges that he needed to perform legal research to defend himself in his state criminal case and to file motions which he could not do.[89]  Plaintiff alleges that he has a federal habeas corpus proceeding pending in this district, in "Case No. CIV 05-1317 BB/RLP," and that he was forced to file "grossly inadequate" objections to the Magistrate Judge's report and recommendations in that case because he could not research the law or

---

[86]*See **Civil Rights Complaint** (Doc. 1)* at ¶ 23.

[87]*Id.* at ¶¶ 24-25.

[88]*Id.* at ¶¶ 26-27.

[89]*Id.* at ¶ 29-30.

"meaningfully support his position."[90]  Plaintiff also alleges, or appears to allege, that without access to legal materials at NMBHI he was unable to determine if he had other cognizable claims against Defendants in this case; was unable to provide legal authorities for his "motion for temporary restraining order/preliminary injunction" filed in this case; and was unable to provide a proper jurisdictional statement in this case.[91]  Plaintiff alleges that he requested a "Section 1983 Civil Rights Complaint Package" from the Clerk of the Court on three occasions but did not receive any response to his requests and that Defendants refused to obtain a Section 1983 complaint form for him from on-line resources.[92]  Plaintiff alleges that Defendants falsely claimed that "unspecified security concerns" justified denying him permission to use a computer and without access to legal materials he cannot assert his "patient rights."[93]  The undersigned liberally construes the foregoing as claims that Defendants deprived Plaintiff of his constitutional right of access to the courts but finds no merit to these claims.

Convicted inmates have a fundamental constitutional right of access to the courts which "requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977).  This right of access to the courts extends to pretrial detainees.  *Love v. Summit County*, 776 F.2d 908, 912 (10th Cir. 1985).  It also extends to detainees in state mental health facilities under commitment orders.  *Ward v. Kort*, 762 F.2d 856, 858 (10th Cir. 1985).  In assessing the adequacy of alternatives to law libraries, a court "must keep

---

[90]*Id*. at ¶¶ 31-32.

[91]*Id*. at ¶¶ 33-35.  Plaintiff's *Motion for Temporary Restraining Order/Injunction* (*Doc. 11*) was denied in a *Memorandum Opinion and Order* (*Doc. 14*) filed on June 29, 2006.

[92]*Id*. at ¶ 36.

[93]*Id*. at ¶¶ 37-38.

in mind that the right of access to the courts merely requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers and that the Supreme Court's main concern is protecting the ability of an inmate to prepare a petition or complaint." *Love*, 776 F.2d at 914 (internal quotation marks omitted). "The Supreme Court has never extended the Fourteenth Amendment due process claim based on access to the courts [ ] to apply further than protecting the ability of an inmate to prepare a petition or complaint." *Id.* (internal quotation marks omitted). "The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of . . . incarceration." *Lewis v. Casey*, 518 U.S. 343, 355 (1996).

To recover on a constitutional claim of denial of access to the courts, Plaintiff must demonstrate that he was denied legal resources and that such denial hindered his efforts to pursue a nonfrivolous claim. *Penrod v. Zavaras*, 94 F.3d 1399, 1403 (10th Cir. 1996). "[C]ontentions of deprivation of access to courts must show actual injury, not mere deprivation, as a 'constitutional prerequisite' to bringing a claim." *Peoples v. CCA Detention Centers*, 422 F.3d 1090, 1107 (10th Cir. 2005) (quoting *Lewis*, 518 U.S. at 351), *vacated in part on other grounds by Peoples v. CCA Detention Centers*, 449 F.3d 1097 (10th Cir. 2006). For the reasons set forth below, the undersigned finds that the evidence in this case does not support a finding that Plaintiff's constitutional right of access to the courts was violated by Defendants while Plaintiff was committed at NMBHI.

The unconverted facts of this case fail to show that a denial of legal resources at NMBHI hindered Plaintiff's defense of his state criminal case. Plaintiff elected to appear *pro se* in his state

criminal case.[94]  However, at all times during his commitment at NMBHI, Plaintiff had the benefit of a court-appointed standby attorney, who was "highly experienced and unusually excellent and competent," to assist him with the defense of his criminal case and there is no evidence in the record that Defendants prevented him from communicating with that attorney by mail or by phone if he wished to do so.[95]  By virtue of having appointed standby counsel, Plaintiff's right of access to the courts was adequately protected in his criminal case even if he was not allowed access to legal materials in order to personally conduct legal research for that case.  *See United States v. Taylor*, 183 F.3d 1199, 1204-05 (10th Cir. 1999) (appointment of standby counsel was the equivalent of providing law library access).  Additionally, Plaintiff has made no showing, apart from his conclusory allegations, that he was prejudiced in his criminal case by a lack of access to legal resources while he was committed at NMBHI.  Pursuant to state law, further proceedings in Plaintiff's criminal case were stayed, by operation of law, while he was a patient at NMBHI by virtue of his having been found incompetent to stand trial.[96]  Thus, the undersigned finds no evidence of injury to Plaintiff's defense of his state criminal case that might constitute a deprivation of his constitutional right of access to the courts.

The uncontroverted facts of this case also fail to show that a denial of legal resources at NMBHI hindered Plaintiff's efforts in his federal habeas corpus proceeding.  This Court's records show that Plaintiff filed a habeas corpus petition in this district on December 19, 2005, related to his state criminal proceeding, *before* he was transferred to NMBHI on February 7, 2006.[97]  Thus,

---

[94]*See **Defendants' Resubmitted Martinez Report** (Doc. 41)* at 01180-01181.

[95]*Id.*

[96]*See* N.M.R.Annot., Rule 5-602(B)(3)(a) (2005).

[97]*See **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 by a Person in State Custody** (Doc. 1)*, filed in Case No. CIV-05-1317 BB/RLP.  The undersigned takes judicial notice of the documents filed in
(continued...)

no acts or omissions of Defendants prevented Plaintiff from filing his federal habeas case.  On

March 6, 2006, the magistrate judge assigned to Plaintiff's habeas case filed a report and

recommendation, recommending that the case be dismissed without prejudice for Plaintiff's failure

to exhaust state court remedies.[98]  On March 21, 2006, Plaintiff filed nine pages of objections to the

report and recommendations (exclusive of exhibits) in which he failed to demonstrate that he had

exhausted state court remedies with regard to his habeas claims.[99]  On April 6, 2006, the presiding

judge in the habeas case entered an order in which he adopted the report and recommendations of

the magistrate judge and dismissed the case, without prejudice, based on Plaintiff's failure to exhaust

state court remedies.[100]  There is no evidence in the record that greater access to legal research

materials at NMBHI would have altered the dismissal of Plaintiff's habeas claims for failure to

exhaust state court remedies.

As noted above, Plaintiff was admitted to NMBHI on February 7, 2006.  Plaintiff filed this

civil rights case on March 31, 2006, challenging his conditions of confinement at NMBHI.  His

eleven-page complaint asserts multiple claims for relief under 42 U.S.C. § 1983.  In his denial of

access claim, Plaintiff appears to allege that he was denied access to legal materials at NMBHI

which prevented him from: (1) determining if he had other cognizable claims against Defendants

in this case; (2) providing additional legal authorities in support of his *Motion for Temporary*

*Restraining Order/Injunction* (*Doc. 11*) filed in this case on June 14, 2007; and (3) providing a

---

[97](...continued)
Plaintiff's federal habeas case.  *See Van Woudenberg ex rel. Foor v. Gibson*, 211 F.3d 560, 568 (10th Cir. 2000)
(court may take judicial notice of its own files and records, as well as facts which are a matter of public record),
*abrogated on other grounds by McGregor v. Gibson*, 248 F.3d 946, 955 (10th Cir. 2001).

[98]*See Magistrate Judge's Report and Recommendation* (*Doc. 11*), filed in Case No. CIV-05-1317 BB/RLP.

[99]*See Petitioner's Objection to the Magistrate Judge's Report & Recommendations* (*Doc. 13*), filed in
Case No. CIV-05-1317 BB/RLP.

[100]*See Order* (*Doc. 14*), filed in Case No. CIV-05-1317 BB/RLP.

proper jurisdictional statement in this case.[101]  Initially, the Court notes that Plaintiff does not allege that he was prevented from filing this case.  Instead, he appears to contend that with greater access to legal materials at NMBHI he could have determined if he had other claims; could have provided additional legal authorities in support of his motion for equitable relief;[102] and could have provided a better jurisdictional statement in his complaint.  However, Plaintiff's constitutional right of access to the courts does not afford him a right to litigate more effectively.  *See Lewis v. Casey*, 518 U.S. 343, 354 (1996) (citing *Bounds v. Smith*, 430 U.S. 817, 825-26, and n. 14) (1977)) ("These statements [in *Bounds*] appear to suggest that the State must enable the prisoner to *discover* grievances, and to *litigate effectively* once in court.  These elaborations upon the right of access to the courts have no antecedent in our pre-*Bounds* cases, and we now disclaim them.").  Thus, even if Plaintiff's allegations regarding a denial of legal materials related to this case are assumed to be true, his constitutional right of access to the courts did not extend to them.  Plaintiff had no constitutional right to legal assistance at NMBHI to help him discover more claims against Defendants and to litigate this case more effectively.[103]

Finally, Plaintiff alleges that he was deprived of his constitutional right of access to the courts because Defendants refused to allow him to use a computer to write and perform legal research.  This claim has no merit.  The Tenth Circuit has held that "[a]ccess to the courts does not

---

[101]*See Civil Rights Complaint* (*Doc. 1*) at ¶¶ 33-35.

[102]The Court notes that Plaintiff was able to file a twenty-six page brief (*Doc. 12*) in support of his motion for equitable relief which included citations to legal authorities and exhibits in support of his position.

[103]There is evidence in the record that NMBHI granted at least some requests by Plaintiff for assistance with legal matters, although it is not apparent which specific legal matters were involved.  *See Defendants' Resubmitted Martinez Report* (*Doc. 41*) at 01018 (at Plaintiff's request, social worker Glenn Wohl provided copies of motions to the court "regarding due process and habeas corpus"); 01019 (at Plaintiff's request, social worker Wohl provided copies of legal motions to Plaintiff and the address and phone number of attorney Joseph Riggs, and also assisted Plaintiff in making a telephone call to Mr. Riggs); 01020 (at Plaintiff's request, social worker Yeshim Ternar copied a large set of legal documents for Plaintiff); 01021 (at Plaintiff's request, social worker Wohl copied legal documents for Plaintiff).

include a federally protected right to use a typewriter or to have one's pleadings typed, the reason being that pro se prisoners['] causes are not prejudiced by the filing of hand-written briefs." *Twyman v. Crisp*, 584 F.2d 352, 358 (10th Cir. 1978) (citations omitted).  Nor does Plaintiff have a federally protected right to the use of a computer.  *See Lehn v. Hartwig*, 13 Fed. Appx. 389, 392 (7th Cir. 2001) (unpublished) ("If prisoners have no constitutional right to a typewriter, they certainly do not have one to a computer.") (citations omitted).  Thus, the undersigned concludes that Plaintiff has no constitutional right to the use of a computer for writing and legal research and this claim should be denied as a matter of law.

### *Conclusion*

There are no genuine issues of material fact with regard to Plaintiff's claims and Defendants are entitled to judgment in their favor as a matter of law.  Accordingly, Defendants' motion for summary judgment should be granted, judgment should be entered in favor of Defendants and all of Plaintiff's claims, and this case, should be dismissed with prejudice.

### <u>RECOMMENDED DISPOSITION</u>

For the foregoing reasons, the undersigned recommends that ***Defendants' Motion for Summary Judgment*** (*Doc. 64*) be **GRANTED** and that judgment be entered in favor of Defendants dismissing all of Plaintiff's claims and this case with prejudice.


_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**


-36-